## TRESCA v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.  December 12, 1910.)

### No. 79.

1. CRIMINAL LAW (§ 422*)—EVIDENCE—STATEMENTS BY CODEFENDANTS. ·

Where two persons were jointly indicted for passing and uttering counterfeit money with intent to defraud, conversations between one of them and detectives in the employ of the United States, not in the presence of the other, were inadmissible against the absent defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 984, 990; Dec. Dig. § 422.*

Admission on joint trial of evidence competent only against one or part of defendants, see note to Sprinkle v. United States, 73 C. C. A. 295.].

2. COUNTERFEITING (§ 18*)—PASSING AND UTTERING COUNTERFEIT MONEY—KEEPING AND CONCEALING—EVIDENCE.

· Evidence *held* insufficient to sustain a conviction of accused for passing and uttering money with intent to defraud, or for keeping · and concealing such money with intent to utter and pass the same, knowing it to be counterfeit.

[Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 44, 45; Dec. Dig. § 18.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Simone Tresca was convicted of passing and uttering a counterfeit $5 note with intent to defraud, knowing the same to be counterfeit, and of keeping and concealing 10 counterfeit $5 notes with intent to utter the same, knowing the same to be counterfeit, and he brings error. Reversed.

L. W. Thompson, for plaintiff in error.
L. R. Bick, Asst. U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges. ·

LACOMBE, Circuit Judge.  One Canella and Simone Tresca were jointly indicted on two counts:  First, for passing and uttering a counterfeit $5 note with intent to defraud, knowing the same to be counterfeit; and, second, for keeping and concealing 10 counterfeit $5 notes, with intent to utter and sell the same, knowing same to be counterfeit. The jury found both defendants guilty.  Canella did not appeal.

There was evidence that one Costanza, an agent of the United States Secret Service, on July 8, 1909, had a conversation with Canella, who offered to sell him some counterfeit notes, which Costanza expressed a willingness to buy.  An appointment was· made for the next day; Canella stating that he was to get the counterfeit notes from a tailor in Greenpoint (Brooklyn).  On the 9th Canella told witness that he had an appointment with this man for the 11th, a Sunday.  On the 11th Costanza met Canella in a pool room, 206 Johnson avenue, and the latter, told him that, being Sunday, the tailor shop was closed, so they might go some other day.  The two next met on July 15th at the pool room and agreed for the purchase of 10 $5 counterfeit notes, Costanza

paying $15 in good money, which had been furnished him by his superiors, and of which the various identifying marks and numbers had been carefully noted. It was agreed that the counterfeits should be delivered outside the Broadway Theater after the first act of an opera which was being sung there that evening. When he made this appointment, Canella stated that he expected to meet the tailor in the theater. Costanza and another Secret Service agent, Rubano, went to the theater, and before the act was over saw Simone Tresca sitting on the end seat of the orchestra in the last third line, seat and Canella sitting or standing alongside of him. At the close of the act Canella came out, followed by two young men, turned over a package of 10 $5 counterfeit notes and agreed to furnish $50 more of the same. The next day Costanza called for Canella at the pool room, and, not finding him, left a message there for him. About 2 p. m. Canella came to witness' house, was asked to get $50 more in counterfeits, and was given $15 more in bills, the numbers of which had been noted. He then stated that the man who gave him the counterfeits had one of the best tailor shops in Brooklyn. Canella then left, and Costanza did not see him again until after his arrest.

During these two days Canella's movements were watched by the detectives. After his interview with Costanza on July 15th he went to 148 Noble street. At that place there are two shops side by side, with a partition between—one occupied by the plaintiff in error as a tailor shop; the other occupied by his brother, Anthony Tresca, as a shoemaker shop. Canella entered the shoemaker shop, and after remaining there a short while came out and went away. On July 16th a watch was kept on 148 Noble street. Canella arrived about 6:30 p. m. and entered. One of the detectives says he went into the tailor shop; the other, that he went into the shoemaker shop. He came out a little before 8 p. m., walked towards the corner, when he was arrested, brought to the tailor shop, and there searched. They found on him a roll of good money—seven $1 and two $2 bills, of which some, at least, were the marked bills. The record is much confused as to the number of marked bills thus found. Apparently no counterfeit bills were found either on Canella, or on the others, or on the premises. On Simone Tresca was found $12 in good bills, of which one $5 bill corresponded with the numbers which had been noted. The bills found on Canella were part of the $15 given him on July 16th; the bill found on Tresca was part of the $15 given to Canella on July 15th.

Rubano testified: That, upon his asking Canella if he had given Tresca any money, he stated that he had called there July 15th for a pair of pants, and again on July 16th to fit them, and that he had not paid Tresca one penny. Apparently this statement was not made in Tresca's presence. Also that, upon being asked, Tresca stated that he did not take any measurements, because he knew Canella and had his measurements. It was further testified that the following conversation took place between the arrested persons. Simone said to Toni: "Do not weep. They have got nothing on me. They can't do anything to us." Canella said: "I wish I was as sure as you two are." And later (to Simone): "Remember, they asked me if I gave you any money."

To which the latter replied: "Why, he took it." This was after the searching. Canella further said: "They saw we were together at the theater." To which Simone said: "They know that." The other agents corroborated Rubano's statement that Canella said he came to be measured for the pants and that he had not paid Tresca any money. It does not appear whether or not Tresca was present when Canella made this statement.

Simone Tresca testified in his own behalf: That about five months before he had made a suit of clothes for Canella out of cloth which the latter brought. It was not paid for when made, Canella promising to settle when he got some money. That on July 15th he came, said he would pay the next day, and ordered a pair of pants. The next day he came and gave defendant $11.50.

Canella testified that Tresca had made him a suit of clothes in May, for which he did not pay until July 16th, when he gave Tresca $11.50. The charge was $12, but he paid only $11.50, saying to Tresca that with the odd 50 cents they would buy some cigars to smoke.

During Costanza's examination counsel for defendant Tresca moved to strike out the testimony as to statements made by Canella to witness in relation to Tresca, the latter not being present when they were made, which motion was quite properly granted "so far as the defendant Tresca is concerned." This took out of the case all statements that he got the counterfeits from a tailor in Brooklyn. Subsequently, during Rubano's examination, the point being again raised, the court instructed the jury that "the statement of one of the defendants to one of the agents at that time is not evidence against the other defendant," which correctly states the law.

If, however, this rule is applied in marshaling the testimony on which the verdict was asked for, there will be found to be very little left. Disregarding entirely the testimony of both defendants, whom the jury evidently discredited, all that remains is that on the evening of July 15th, at the Broadway Theater, the opera being "Rigoletto" and many Italians present, Canella was seen sitting or standing next to Tresca for a part of one act; that Canella went to Tresca's tailor shop the next afternoon; and that, Tresca being thereupon seized and searched, there was found on him a single marked $5 bill, which had been given to Canella the day before in exchange for a batch of counterfeit money. No other marked bills, no counterfeit money, was found on Tresca's person or on his premises, nor on his brother's person or premises. Three witnesses testified to his good reputation.

Upon this record we are of the opinion that the government has not shown enough to entitle it to go to the jury on the proposition, either that Tresca uttered a counterfeit $5 note, or had had 10 counterfeit $5 notes in his possession with intent to utter the same. There was error, therefore, in the denial of the motion to discharge him on the ground that there was no evidence to connect him with a crime.