## UNITED STATES v. McCARTHY et al.

### No. 50, Docket 21744.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1950.

Decided Dec. 4, 1950.

Florence M. Kelley, New York City, James S. Rosenman, New York City, of counsel, for defendant-appellant, Timothy McCarthy.

Alfred E. Santangelo, New York City, for defendant-appellant, Philip Arra.

Irving H. Saypol, U. S. Atty., New York City, Bruno Schachner, Clarke S. Ryan, James B. Kilsheimer and John D. Kelly, Asst. U. S. Attys., all of New York City, of counsel, for United States of America, plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendants McCarthy and Arra were indicted with one Blake. The charges against the three were made in two counts. In the first count they were charged with having passed one counterfeit ten dollar note on the Federal Reserve Bank of Dallas, Texas, on March 28, 1950. In the second count they were charged with having passed another counterfeit ten dollar note on the Federal Reserve Bank of Dallas, Texas, on March 28, 1950. By the third count Blake alone was charged with possessing three counterfeit ten dollar notes on the Federal Reserve Bank of Dallas, Texas. Blake pleaded guilty to all three counts. McCarthy and Arra went to trial upon the two counts on which they were indicted. The jury acquitted McCarthy and Arra on the first count, but convicted them on the second count. McCarthy was sentenced to serve a term of imprisonment of eighteen months and Arra of three years.

At the trial the government called as witnesses one Lauro, the owner of a tavern on Second Avenue, New York; Ruggieri, a detective of the New York Police Department; Sweeney and Peters, agents of the Treasury Department, attached to the Secret Service Division, and the defendant Blake, who was a soldier on leave.

According to Lauro's testimony, Blake entered Lauro's bar on the afternoon of March 28, bought one drink with good money and then ordered a second drink and paid for it with the counterfeit ten dollar note referred to in count one of the indictment. A few minutes later McCarthy and Arra came into the bar, ordered a beer and then, appearing to meet Blake for the first time, though he testified that they previous-

ly had been drinking and dining with him, invited him to have a drink with them. This drink was paid for with good money. Thereafter, Lauro saw a bill on his bar, which was the counterfeit bill referred to in the second count of the indictment. While he cashed that bill he apparently became suspicious about its genuineness and called the police, whereupon the three men left the bar. Lauro testified that he did not know whether Blake, McCarthy or Arra left the counterfeit bill on the bar. Blake was the only witness called by the government who was in Lauro's bar when the counterfeit bill was passed on which the second count was founded.

Ruggieri arrested Arra and drove him to the police station at 104th Street in company with Blake and the Treasury Agent Sweeney. Under examination by the Assistant United States Attorney, Ruggieri testified as follows:

"Q. Did Arra say anything in the car while you were on the way to the station house? A. He did.

"Q. What did he say? A. 'Can we straighten this thing out?'

"Q. What did you say? A. I didn't say anything. Agent Sweeney told him, 'Why, you have nothing on you.'

"Q. That was as a result of your search he said that? A. Yes.

"Q. What did he say? A. Then Arra said, 'Well, I could get it.'"

The following version of what Arra said was given by Sweeney: "Arra inquired of me if we couldn't get together on the case, and I asked him what he meant by it. He stated that maybe we could talk it over, whereby I could get myself a grand, and I replied that I had two buddies of mine in the automobile. 'What about them?' So he said they could be taken care of. I then asked him where he would get that kind of money. So he suggested that we drive to the Hotel Markwell in Midtown, and that was the extent of that conversation."

In our opinion there was not sufficient evidence to convict McCarthy. The statements of Lauro as to who passed the second counterfeit bill were confused and entirely inconclusive of guilt on the part of McCarthy. Lauro at first said that he did not know whether McCarthy, Blake or Arra passed the bill. He testified at another time that it was either Arra or McCarthy who passed it, but it was said that he told the agents that it was Blake who passed it. Such contradictory versions of what occurred render his testimony so inconclusive that the judgment against McCarthy cannot stand.

The evidence against Arra is not substantially stronger. There is no evidence that he passed the counterfeit bill. The only possible basis for his conviction must rest on his statement to Ruggieri and Sweeney that he would like to "get together" with them "on the case." Even this was not enough without further evidence against him to justify the verdict. He seems to have had a criminal record which may have made him fear conviction however weak the evidence against him might have been. It is true that Blake testified that Arra had given him four ten dollar bills on the previous day, but there was no proof that these bills were counterfeit and certainly no proof that the second counterfeit bill passed came from Arra. Blake refused to testify as to what had become of any of the four ten dollar bills, claiming his privilege. There seems to be no doubt that Blake, McCarthy and Arra had been dining together the day and afternoon before the two counterfeit bills were passed, and to have been drinking heavily. In the circumstances, we cannot see that there was sufficient proof to connect Arra with the passing of the second counterfeit bill. The testimony against him, as that against McCarthy, was too slight and too dependent upon proof of "guilt by association" to warrant conviction. Other courts have found it necessary to reverse in somewhat similar circumstances. Tresca v. United States, 2 Cir. 1910, 183 F. 736; Ayervais v. United States, 3 Cir. 1934, 72 F.2d 720; Matchok v. United States, 3 Cir., 1932, 60 F.2d 266.

The judgments of conviction must be reversed as against both appellants and the indictments dismissed.